UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REGINALD HAYES,

            Plaintiff,

vs.                              Case No.  2:06-cv-101-FtM-29DNF

MICHAEL   WAITE,   J.L.D.   TREVINO,[1]
CAPTAIN ELLEGOOD,

            Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon review of Defendants'
Motion to Dismiss and Memorandum of Law in Support Thereof, which
was jointly submitted on behalf of Defendants Waite, Trevino and
Ellegood ("Defts. Mot." Doc. #32).  Defendants attach the affidavit
of Sergeant Jeffrey L.D. Trevino (Def. Exh. #1) and pages from
Plaintiff's medical file (Def. Exh. #2) to their Motion.[2]  Because
Defendants' Motion refers to matters outside the four corners of
Plaintiff's Complaint, the Court converted the Motion into a motion
for summary judgment.  Somerville v. Hall, 2 F.3d 1563, 1564 (11th
Cir. 1993).  The Court advised Plaintiff how to respond to a motion

_____

[1]Plaintiff identifies Defendant Trevino as "Traveno" in his
Complaint.  Although Defendants do not point out this error, based
upon the affidavit signed by Defendant, the correct spelling of
Defendant's name is "Trevino."

[2]The Court will refer to the Exhibits submitted in support of
Defendants' Motion as "Def. Exh".  The page numbers referenced in
this Order are the page numbers that appear at the top of the page
on the Court's CMECF site.

brought pursuant to FED. R. CIV. P. 56 (Doc. #33), and Plaintiff filed a Response to Motion for Summary Judgment (Doc. #35, Pl. Response).   Plaintiff attaches to his Response the following exhibits: pages numbers 1 and 2 of Defendant Trevino's affidavit (Pl. Exh. #1); two pages of progress notes from Plaintiff's medical file (Pl. Exh. #2); a victim affidavit submitted to Lee County Sheriff from Rodney Stirrup dated November 16, 2004, regarding burglary of Mr. Stirrup's home (Pl. Exh. #3); an inmate complaint form dated February 26, 2006 (Pl. Exh. #4); page number 2 of Defendants' Motion and page number 3 of Defendant Trevino's affidavit (Pl. Exh. #5); a form entitled "Mental Status Evaluation" dated December 24, 2004 (Pl. Exh. #6); Plaintiff's inmate account summary for the period ending June 29, 2006 (Pl. Exh. #7); and an inmate grievance form dated January 25, 2005 (Pl. Exh. #8) (collectively docketed at Doc. #35-2).[3]   This matter is now ripe for review.

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(c).   An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a

---

[3]The Court will refer to the Exhibits submitted in support of Plaintiff's Response as "Pl. Exh."

verdict for either party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  <u>Id.</u>  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion.  <u>Celotex</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party.  <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact.  <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir.

2000).  In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002).

## II.

Plaintiff, while confined in the Lee County Jail,[4] filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 (Doc. #1) alleging constitutional violations stemming from his placement in and the conditions of various components of the Lee County Jail.  Read liberally, Plaintiff alleges: (1) Due Process violations stemming from his placement in disciplinary confinement without reason; (2) Eighth Amendment violations due to the cruel and unusual conditions of his confinement; and (3) Eighth Amendment violations for deliberate indifference to Plaintiff's serious medical condition. Plaintiff seeks $35,000 against each Defendant and $100,000 against the Lee County Jail as relief.[5]  Complaint at p. 11.

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege and establish that (1) defendant deprived him of a right secured

---

[4]Plaintiff is now in the custody of the Florida Department of Corrections and is incarcerated at the DeSoto Annex.

[5]Defendants incorrectly state the amount of damages Plaintiff seeks as $50,000 against each Defendant.  Defts. Mot. at p. 2, ¶4.

under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998); <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh v. Butler County, Ala.</u>, 268 F.3d at 1059; <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

Although not addressed by the parties, it appears from a review of the Complaint and record that Plaintiff was being held in the Lee County Jail as a pretrial detainee at the time of the events complained of in the Complaint.[6] Thus, Plaintiff's rights as a detainee arise from the Fourteenth Amendment, not the Eighth Amendment. The case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous to those under the Fourteenth Amendment. <u>Cook ex. rel Estate of Tessier v. Sheriff of Monroe County Fla.</u>, 402 F.3d 1092, 1115 (11th Cir. 2005). Despite the uncertainty regarding

---

[6]Plaintiff claims he arrived at the Lee County Jail on November 3, 2004. Complaint at p. 8. Further, in the grievances attached to the Complaint, Plaintiff complains that his "charges" do not warrant him being classified as "high risk." Grievance dated 1/25/06. Further, the Court takes judicial notice that in his previous action filed with the Court in August, 2005, Plaintiff asserted claims against his criminal defense counsel for waiving Plaintiff's speedy trial rights in Plaintiff's then pending criminal action. <u>See</u> Case No. 2:05-cv-393-29-DNF.

Plaintiff's status, the "minimum standard" of ensuring inmates with "basic necessities" is the same under either constitutional provision. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985)("In regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted persons.").

It does not appear that all the claims have been administratively exhausted pursuant to 42 U.S.C. § 1997e(a). Plaintiff attaches grievance forms to his Complaint dated January 27, 2005, and January 25, 2006.  Both grievance forms address only Plaintiff's initial placement and his continuing confinement in disciplinary confinement. Defendants, however, do not raise exhaustion as an affirmative defense to any of Plaintiff's claims in their Motion.  Consequently, the Court will treat each of Plaintiff's claims as exhausted for purposes of this Order.  See Jones v. Bock, 549 U.S. 15 (2007).

### III.

Plaintiff arrived at the Lee County Jail on November 3, 2004, and was placed in housing block "4H."  Complaint at p. 8.  In mid November[7] 2004, Plaintiff was moved from "4H" to "B Pod" in the Lee

---

[7]In the Complaint, Plaintiff states he was moved on November 19, 2004. Complaint at p. 9.  Defendant Trevino, in his Affidavit, states Plaintiff was moved on November 16, 2004. Def. Exh. 1, ¶4.
(continued...)

County CORE Facility.[8]   Plaintiff claims that the "B Pod" is "a solitary confinement part of the jail."   Id.   While in "B Pod," Plaintiff was subject to telephone and visitation restrictions. Pl. Resp. at p. 4.   Plaintiff asked Defendant Trevino why he was "being punished for nothing" because he did not have any "disciplinary reports at the time" to warrant the move.   Complaint at p. 9.

According to the Affidavit submitted on behalf of Defendants, Plaintiff was moved from H-Block to the CORE Facility "for mental health evaluations and for behavior not consistent with other inmates while in the general population."   Def. Exh. 1, ¶4. "During this time," Plaintiff had received eleven disciplinary reports for "institutional rule violations including conduct that interfered with the security or orderly running of the institution," including: "destroying, altering or damaging County property or property of another person; defacing walls, blocking any air vents or, blocking an officer's view with any article or placement of articles in bars, windows or locking devices; failing to keep ones person and ones quarters in sanitary condition; and

---

[7](...continued)
In Plaintiff's Response, Plaintiff agrees that he was moved on November 16, 2004. Pl. Resp. at p.6.

[8]The Lee County CORE Facility is located at 2501 Ortiz Avenue in Fort Myers, Florida.

placement of articles in a day-room without approval." Id. at ¶5.

Plaintiff began experiencing "psychological problems" after he was moved from "H" block and was placed in the suicide observation unit. Complaint at p. 9. Defendants confirm that on December 17, 2004, Plaintiff was transferred to "3A Direct Observation" because "[Plaintiff] threatened suicide." Def. Exh. 1, ¶6. Plaintiff remained in the suicide observation from December 17, 2004, until January 25, 2005. Id. During his time on observation, Plaintiff was seen regularly by medical staff personnel. Def. Exh. #32-3 at pp. 5-6. On December 21, 2004, during Plaintiff's mental status evaluation, Plaintiff complained that "they keep writing me DRs." Id. at p. 1. Plaintiff also advised medical staff at this time that he had sickle cell anemia. Id. A "Consent to Mental Health Evaluation or Treatment" form, "Behavior Contract," and an "Authorization for Release of Medical Records" form dated December 21, 2004, were not executed by Plaintiff. A notation at the signature line of each from reads "IM unable to sign due to attitude." Id. at pp. 2-4.

On January 25, 2005, after being cleared by Mental Health Staff, Plaintiff was transferred to the Lee County Jail[9] by Defendant Trevino, pursuant to Defendant Ellegood's order.

_____

[9]The Lee County Jail is located on 2115 Dr. Martin Luther King, Jr. Blvd., Fort Myers, Florida.

Complaint at 9.  Plaintiff asked again why he was being moved, and "they" told him "because they have the authority" and because Plaintiff has "behavior problems." Id.  Plaintiff does not specify to whom "they" refers.  Defendants explain that Plaintiff was moved to "1F" to finish serving his disciplinary confinement for "the previous 11 violations he committed before entering 3A Direct Observation."  Def. Exh. 1, ¶7.  At this time, jail officials had determined that "[Plaintiff] had not demonstrated that he was able to be placed in the open population, or that he could conform to institutional rules."  Id.

Plaintiff claims that due to his sickel cell anemia he requires "a diligent amount of space."  Complaint at p. 9.  While in disciplinary confinement in January, 2005, Plaintiff states that he began to "get sick" due to the "unsanitary conditions."  Id. The unsanitary conditions resulted from inmates throwing feces and urine on each other.  Id.  Plaintiff would "breath the bacteria." Id.  The "limited surroundings" to which Plaintiff was subjected affected his "health" and his "chronic illness." Id.  Plaintiff generally claims that he went without "medical necessities." Id. Eventually, Plaintiff had a "sickle cell crisis and got to the hospital" but when he returned to the jail he was put back "behind a steel door or [placed on] solitary confinement." Id.

Plaintiff remained in the disciplinary part of the Lee County Jail for over 16 months.  Id.  Plaintiff denies that he committed any disciplinary infractions to warrant his placement in the disciplinary unit.  Instead, Plaintiff argues that he was placed in confinement because the victim in his underlying criminal case is related to a captain at the Lee County Sheriff's Office.[10]  Id. Defendants maintain that "[t]he placement of [Plaintiff] in various areas during his incarceration [was] . . . determined based upon the concern for the safety and needs of Hayes, as well as the other inmates."  Def. Exh. 1, ¶10.  Throughout the sixteen months of Plaintiff's incarceration, Plaintiff had received "disciplinary reports for 29 separate incidents."  Id. at ¶8.

## IV.

At the outset, the Court notes that the Complaint states only that Defendant Waite was aware of the "internal conspiracy" directed against Plaintiff "because [Waite] is the commander over the facility."  Id.  The Complaint contains no other facts or allegations pertaining to Defendant Waite's involvement in the alleged constitutional deprivations.

A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983

---

[10]Plaintiff identifies the relative at the Sheriff's Office as "Captain Pearce," who is not named as a defendant in this action.

action.   Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).   To imput a supervisor with knowledge, the knowledge "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994).   Moreover "filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied."   Haverty v. Crosby, No. 1:05-CV-00133, 2006 WL 839157, *5 (N.D. Fla. Mar. 28, 2006)(citations omitted).   Plaintiff's Complaint is dismissed as to Defendant Waite.   Consequently, the Court will address the merits of Plaintiff's claims as against Defendants Trevino and Ellegood only.

## 1.   **Placement on Disciplinary Confinement**

Not every restriction imposed during a pretrial detention amounts to punishment, even those that interfere with a detainee's ability to live as comfortably as possible or with as little restraint as possible.   Bell v. Wolfish, 441 U.S. 520, 537 (1979). For instance, there is no constitutional entitlement to a particular custody classification.   Hewitt v. Helms, 459 U.S. 460, 466 (1983) (no liberty interest exists in being assigned to general

population as opposed to administrative confinement); see also Moody v. Daggett, 429 U.S. 78 (1976). Moreover, "[e]nsuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Bell, 441 U.S. at 561.

The Court takes judicial notice that the Lee County Sheriff's Office has promulgated an Inmate Rules and Regulations Handbook. The Lee County Jail's classification section is responsible for the housing of inmates while incarcerated. Inmate Handbook, revised 12/2002, at p. 13. Inmates are placed in the type of housing that "best meets their needs" and provides "reasonable protection for the inmate and other inmates." Id. An inmate's classification status can change during their incarceration which results in a move to another type of housing area. Id. at p. 14. Additionally, inmates who fail to conform to institutional rules and regulations may be subject to various types of disciplinary action, including lock down in their cells, placed in disciplinary confinement, or administrative confinement. Id. at p. 5.

Here, Plaintiff asserts that his housing location was changed and he was moved to disciplinary confinement "for no reason." Complaint at p. 8. Alternatively, Plaintiff surmises that he was placed on disciplinary confinement because a cousin of a Lee County deputy was the victim of a crime and blamed Plaintiff for the

crime.  As support for his assumption, Plaintiff submits a victim affidavit submitted to Lee County Sheriff from Rodney Stirrups dated November 16, 2004, regarding an alleged burglary of Mr. Stirrup's home.  Pl. Exh. 3-B.  According to Mr. Stirrups' victim affidavit, three men came into his home through the bedroom window looking for money.  <u>Id.</u>  Mr. Stirrups states in his victim affidavit that  "R. Hayes told the three men that the money is in the house."  <u>Id.</u>  Plaintiff argues that he was wrongfully accused of telephoning individuals from jail and/or conspiring with someone to burglarize Mr. Stirrup's home.  Plaintiff argues that, as a result of these false accusations, he was moved to solitary confinement.  Pl. Resp. at p. 10.

Even assuming that Plaintiff's placement in disciplinary or administrative confinement implicates a liberty interest, Plaintiff does not provide any evidence that his placement in confinement constituted "punishment" in violation of his Due Process rights.[11]  To the contrary, the undisputed evidence demonstrates that jail officials determined that Plaintiff's behavior posed a threat to Plaintiff's safety, as well as to the safety of other inmates necessitating Plaintiff's placement in

---

[11]Plaintiff does not allege that he failed to receive a hearing on the matter in violation of his procedural due process rights.  <u>See</u> <u>Hewitt</u>, 459 U.S. at 476 (where an inmate poses a security threat, "an informal, nonadversary evidentiary review is sufficient").

-13-

confinement.  Def. Exh. #1.  The fact that Plaintiff threatened suicide shortly after his transfer to the "B Pod" corroborates Defendants' belief that Plaintiff posed a threat to himself.

Moreover, to the extent that Plaintiff claims that he was improperly disciplined or that he was improperly punished because he was falsely accused in connection with the Stirrup robbery, his claim comes within the ambit of Heck v. Humphrey, 512 U.S. 477 (1994), and must be dismissed since any action for money damages has not accrued.  See Edwards v. Balisok, 520 U.S. 641 (1997). Therefore, based upon the record, the Court finds that Defendants Trevino and Ellegood are entitled to summary judgment as a matter of law regarding Plaintiff's claim that he was wrongfully assigned to a disciplinary confinement.

## 2.  **Conditions of Confinement**

Plaintiff asserts violations of the Eighth Amendment with respect to the conditions he encountered while he was held in disciplinary confinement.  The Eighth Amendment, which prohibits the infliction of cruel and unusual punishment on those convicted of crimes, has two components (objective and subjective) that a prisoner must allege and prove before a violation will be found. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994).  "The objective component of an Eighth Amendment claim is .

-14-

. . contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citation omitted); Hill, 40 F.3d at 1186. The objective component "inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation . . ." Sims v. Mashburn, 25 F.3d 980, 983-84 (11th Cir. 1994) (citation omitted). For instance, to satisfy the objective prong for a conditions of confinement claim, "extreme deprivations are required . . ." Hudson, 503 U.S. at 9. An "extreme" deprivation "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). Thus, only those conditions that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Second, a plaintiff must come forward with some factual allegations to show that the defendant official "acted with a sufficiently culpable state of mind." Id. (citing Hudson, 503 U.S. at 8). Negligence is not enough. Chandler, 379 F.3d at 1289. Rather, a plaintiff must show the defendant acted with "deliberate difference." Id. Significantly, a defendant must (1) have subjective knowledge of a risk of harm; (2) disregard that risk; and (3) engage in conduct that rises above mere negligence.

-15-

Plaintiff complains that, after he was moved back to disciplinary confinement from the suicide observation unit in January, 2005, he became sick due to "unsanitary conditions" caused by "inmates throwing feces and urine at each other" and the "limited surroundings." Complaint at p. 9. Defendants dispute that Plaintiff was ever "deprived of any minimal civilized measure of life's necessities." Def. Exh. #1, ¶9.

At the outset, even if the Court objectively found that the conditions to which Plaintiff was subjected "extreme," the Court finds that Plaintiff has failed to allege a causal connection between the conditions of his confinement and the actions or inactions of Defendants. Notably, the Complaint is devoid of any allegations that Plaintiff complained to these Defendants about being exposed to the "unsanitary conditions." Further, Plaintiff admits that other inmates, not Defendants, created the "unsanitary conditions" by throwing feces and urine. Nowhere does Plaintiff allege that these Defendants knew of these conditions or failed to take steps to correct these conditions. In fact, in Plaintiff's Response, Plaintiff states only that an unidentified "officer declined to *immediately* clean and sanitize the sewage . . ." Pl. Resp. at p. 5 (emphasis added). Plaintiff does not identify the name of the "officer." Consequently, Plaintiff's claims concerning

the conditions of his confinement  must be dismissed as a matter of law as to Defendants Trevino and Ellegood.

### 3. __Denial of Medical Care__

In order to state a claim for a violation under the Eighth Amendment, a plaintiff must show that public officials acted with deliberate indifference to Plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).  Thus, a plaintiff first must demonstrate that he had an "objectively serious medical need." Id. at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). Second the plaintiff must show that the official acted with an attitude of "deliberate indifference" toward rendering treatment to the serious medical need. Id. (quoting Farmer v. Brennan, 511 U.S. 825 (1994).  Deliberate indifference is a state of mind more egregious and culpable than mere negligence. Estelle, 429 U.S. at 104-106.  In fact, even gross negligence does not satisfy the "sufficiently culpable state  of mind" standard. Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004).  Conduct which results from accidental inadequacy, or which arises from negligence in diagnosis or treatment, or even which is considered medical malpractice under state law, does not constitute deliberate indifference. Taylor v. Adams, 221 F.3d at 1258.  Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Faison v. Rosado</u>, 129 Fed.Appx. 490, 491 (11th Cir. 2005) (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1501 (11th Cir. 1991)).

Plaintiff claims that he suffers from sickle cell anemia.[12] As a result of this "chronic illness," Plaintiff claims that on January 25, 2005, he became "sick because of the unsanitary conditions" that resulted from his exposure to the feces and urine thrown by other inmates. Complaint at pp. 8-9, Pl. Resp. at p. 5. Plaintiff elaborates in his Response that on February 25, 2005, he went into a "sickle cell crisis" and became ill with a "temperature, diarrhea, bone and joint pain and accumulated pneumonia." Pl. Resp. at p. 5. Plaintiff declared a "medical emergency" which was ignored. <u>Id.</u> at pp. 5-6. Plaintiff continued to go without any pain medication or antibiotics. <u>Id.</u> at p. 6. Plaintiff claims that his family began calling the jail in an attempt to get Plaintiff medical assistance. <u>Id.</u> Plaintiff was taken to the hospital on February 28, 2005, but only after Plaintiff's family called 911 "while consulting with the head

_____

[12]Sickle cell anemia is a disease in which the body produces abnormally shaped red blood cells that are crescent or sickle shaped. These red blood cells break down faster than normal red blood cells, which leads to anemia. Additionally, these abnormally shaped cells can block normal blood flow and cause pain and organ damage.

nurse" who was still on the phone.  Id.  Plaintiff remained hospitalized until March 5, 2005, when he was returned to the Lee County Jail and placed back in confinement.  Id.  Plaintiff complains that the "medical unit" deprived Plaintiff of his constitutional rights.  Id. at p. 8.

Defendants fail to address Plaintiff's claim of deliberate indifference regarding Plaintiff's sickle cell crisis in their Motion.  Nonetheless, based upon the record, the Court finds no allegations or evidence to support a claim for medical indifference against the named Defendants.  First, assuming arguendo that Plaintiff's sickle cell anemia is a serious medical condition, the Complaint and record before the Court are devoid of any factual allegations that Defendants knew of Plaintiff's medical condition, or that it was Defendants who denied Plaintiff necessary medical care for his condition.

The record reveals that Plaintiff advised the mental health workers in December 2004 of his medical condition. Def. Exh. #32-3 at p.1.  Plaintiff, in his Response asserts that he, and his family members, spoke with a "nurse" or the "medical unit" about his condition.  Id. at pp. 7-8.  Plaintiff's medical records demonstrate that he was examined in the jail's medical department on December 31, 2004, January 1, 2005, twice on February 26, 2005, and twice on February 27, 2005.  Pl. Ex. #7.  Finally, although

Plaintiff agues that his "medical history was irrelevant," Id. at p. 8, it is clear that Plaintiff did not execute the "Authorization for Release of Medical Records" on December 21, 2004, so that the jail's medical department could obtain Plaintiff's private medical records to confirm his claimed medical diagnosis. Def. Exh. #2 at p. 4.

Alternatively, to the extent that Plaintiff deems his suicidal state as constituting a serious medical condition, it is clear from the record that Plaintiff received medical attention for this condition. Plaintiff was placed in the suicide observation unit, known as 3A Direct Observation Unit, and remained in this unit for five weeks until he was cleared by the jail's mental health professionals. Def. Exh. #1. Plaintiff was regularly visited by mental health professionals while on suicide observation. Def. Exh. #2. Plaintiff was issued a "suicide prevention gown in place of his clothing. At no time was Hayes deprived of this gown, or any single human need while in 3A Direct Observation." Def. Exh. 1, ¶4.

Consequently, the Court finds that based upon the record, Defendants Trevino and Ellegood are entitled to judgment as a matter of law as to Plaintiff's claims of deliberate medical indifference.

Accordingly, it is hereby

**ORDERED and ADJUDGED:**

1.     Plaintiff's Complaint is **DISMISSED** as against Defendant Waite.

2.     Defendants' Motion to Dismiss (Doc. #32), construed as a Motion for Summary Judgment, is **GRANTED.**

3.     The **Clerk of Court** shall: 1) enter judgment accordingly; 2) terminate any outstanding motions; and 3) close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___27th___ day of September, 2007.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record